UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| LETIZIA RYANS, JALISSA BRANCH COMPTON, A/N/F OF CARMEN WILLIAMS, AND EARL ROGERS WILLIAMS, JR., | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. _____ |
| v. | § § | |
| DSV ROAD, INC., | § § | JURY TRIAL REQUESTED |
| Defendant. | § § | |

PLAINTIFFS' ORIGINAL COMPLAINT

INTRODUCTION

1.      DSV Road, Inc., from an address in Medford, Oregon, brokered a truck load of pipe to a trucker in Texas.  DSV Road, Inc. chose not to check the trucker's record.  Had it checked, DSV Road, Inc. would have known the trucker had been cited six days earlier for failure to have reflective material on the side of his flatbed trailer.  When the trucker backed his trailer across the oncoming lane of a dark Texas road, with his headlights facing oncoming traffic, Arthola Toran was killed.  This is a diversity case by three of her adult children under the Texas Wrongful Death Statute, § 71.001 *et seq.* of the Texas Civil Practice and Remedies Code.

PARTIES

2.      Plaintiffs, Letizia Ryans and Earl Rogers Williams, Jr., are residents of Liberty County, Texas.

3.      Plaintiff, Jalissa Branch Compton, a/n/f of Carmen Williams, is a resident of Harris County, Texas.  Carmen Williams is mentally incompetent to proceed as a Plaintiff

personally and has no guardian or other appointed representative.  Jalissa Branch Compton is

Carmen Williams' daughter and is appearing on her behalf under Rule 17(c)(2) of the Federal

Rules of Civil Procedure.

4.      Defendant, DSV Road, Inc., is an interstate freight broker that provides brokerage

services all over the United States.  DSV Road, Inc. is incorporated under the laws of the State of

Oregon and has its principal place of business outside the State of Texas.  On information and

belief, the principle place of business of DSV Road, Inc is either the State of Oregon or the State

of New Jersey.  DSV Road, Inc. is authorized to transact business in the State of Texas and may

be served with process by serving its registered agent for service, Corporation Service Company,

at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a).

6.      Venue is proper before this Court under 28 U.S.C. § 1391(b)(2), because the

trucker to whom DSV Road, Inc. tendered a load is located in Liberty County, Texas, and the

crash that resulted in the death of Arthola Toran occurred in Liberty County, Texas.

FACTS

7.      DSV Road, Inc. ("DSV") is a federally licensed broker of freight.  DSV is

approached by customers who want to ship goods by truck.  DSV maintains a website on which

truckers can register and apply to transport those loads.  The trucker can search for loads by

origination, destination, and radius.  The list of loads returned includes loads with originations

and destinations in more than one state, depending on the parameters entered.  DSV then tenders

the load to the trucker with instructions detailing how the work is to be carried out.  The trucker

would then accept the load and perform the services detailed in the tender agreement.

8.      On or about February 23, 2017, Disraelis D. Reyes, d/b/a Loads 4 Texas

Trucking, had a record of violations that showed he had been inspected twice, once on January 4,

2017, and again on February 17, 2017.  Reyes passed neither of those inspections and was placed

out of service as a result of the first inspection.  As of February 23, 2017, Reyes had an out of

service rating percentage of 50%.

9.      As a result of the second inspection, on February 17, 2017, Reyes was cited for

failure to have proper reflective materials on the side of his flatbed trailer.

10.     On February 23, 2017, Reyes' record of violations was available for inspection by

the public.

11.     Reyes was required by regulations to keep records showing that he had remedied

these violations, but there appear to be no such records.  On information and belief, Reyes

simply continued to use his truck without curing the violations, in violation of federal law.

12.     On or about February 23, 2017, Reyes, or his wife on his behalf, logged on to the

DSV website and applied for a load to haul pipes.  DSV tendered the load to Reyes from its

address in Medford, Oregon.  DSV chose to either not check Reyes' violation record, or not

require Reyes to provide evidence that he had remedied the violations.

13.     On February 23, 2017, under detailed instructions from DSV, Reyes picked up the

load of pipe in Liberty, Texas.  At approximately 9:30 that evening, Reyes was on Texas FM

767, in a dark unlit area of the road.  FM 767 is a two-lane road.  Reyes headed eastbound and

stopped to attempt to back into a drive on his property located on the south side of FM 767.

With his tractor still facing eastbound, he began the backing maneuver so that his flatbed trailer

went across and obstructed the westbound lane of traffic.  The headlights facing east would

appear to a person traveling west to be a vehicle traveling in the eastbound lane.  The headlights

in addition to the lack of reflective material on the trailer would have made the trailer essentially invisible to a westbound traveler in that location at that time of night.

14.     Arthola Toran was westbound on FM 767, returning home from a church meeting. Her vehicle ran into the trailer and the crash resulted in her death.  Photographs of the death scene show that the trailer still lacked reflective material on the side.

<u>RESPONSIBILITY OF DSV ROAD, INC.</u>

15.     Under Texas law, by hiring Reyes to deliver the load, DSV was required to investigate Reyes' competency to drive that load safely to protect other persons on Texas roads and highways.  DSV was negligent by failing to investigate Reyes' violation record, and in failing to require Reyes to provide proof that the violations had been cured before tendering him the load.  Photographs taken at the death scene show that Reyes had in fact not cured the defect for which he was cited on February 17, 2017, because he had not provided adequate reflective material on the side of his flatbed trailer.  Reyes' failure to properly maintain his tractor-trailer rig, and his failure to remedy violations rendered him incompetent to drive that rig.  The negligence of DSV was a proximate cause of the crash and of damages to Plaintiffs.

16.     In addition, Reyes was negligent for failing to properly maintain his equipment and particularly failing to provide proper reflective material on the side of his flatbed trailer. Reyes was also negligent for attempting the above-described backing maneuver in the dark the way he attempted to do it.  Reyes was further negligent for failure to take further steps to ensure that any oncoming traffic would know that he was backing across the road, far enough away from the flatbed to give the person time to stop, such as having flares, or a person with a flag, or other method to give proper notice.  Reyes' negligence for which DSV is responsible as set out in this paragraph, was a proximate cause of the crash and of damages to Plaintiffs.

17.     DSV is responsible for the negligence of Reyes because DSV controlled the details of the shipment, Reyes was acting as DSV's agent, and/or because DSV and Reyes were engaged in a joint enterprise.  The legal concepts of *respondeat superior* over a non-employee, agency, and joint enterprise under Texas law have slightly different and to a certain extent overlapping criteria.  However, all three in substance concern the amount of control that DSV exercised over Reyes.  Further discovery will be necessary to determine exactly which of the three concepts applies to all of the facts in this case, but the amount of control that DSV exercised over Reyes in the performance of this load was extensive.  The amount of control shows that at least one of the three legal criteria applies.  Among other things:

- DSV required Reyes to have pipe stakes, dunnage, a headache rack, and safety gear including steel toe boots.

- Reyes was required to call the dispatcher to get this load approved before leaving the facility, and if he failed to do so, $50.00 would be deducted from his compensation.

- Reyes was required to keep the rate sheet confidential or be fined up to $200.00.

- Reyes was required by DSV to determine himself whether or not the load was within legal weight limits.

- If Reyes failed to arrive at an appointment for loading or delivery on time, he was subject to a fine of up to $150.00.

- If Reyes were to fail to immediately contact DSV to give the reason for being late, he could be fined $200.00.

- If Reyes were to fail to notify DSV of differences in footage or material loaded, he would be subject to a fine beginning at $500.00 and going up from there.

- In addition to other safety gear, Reyes was required to wear a reflective vest when loading, wear long pants and a shirt, and wear safety glasses and a hardhat.

- Reyes was required to notify DSV of any problems, and to notify DSV when he picked up the load.

- Reyes was required to transport the load himself, and was not allowed to hire anyone else.

- Reyes was not allowed to carry any other freight in addition to this load.

- To get paid, Reyes was required to provide a signed shippers' bill of lading and other paperwork to DSV Road, Inc., P.O. Box 1147, Medford, Oregon 97501.

<u>DAMAGES</u>

18.     Each Plaintiff seeks damages in excess of $75,000.00.  Damages are sought under § 17.001 *et seq.* of the Texas Civil Practice and Remedies Code, the Texas Wrongful Death Statute.

19.     At the time of her death, Decedent was sixty-seven (67) years old.  She was in good health.  Decedent was divorced at the time of death, with four children.   During her lifetime, Decedent was industrious and energetic and helped provide to her family.   She performed numerous unusual tasks for her family and gave advice, comfort, care, and protection to her children.   In all reasonable probability, she would have continued to do so, providing for and aiding in the support of her children for the remainder of their natural lives.

20.     As a result of the untimely death of Decedent, Plaintiffs have suffered a pecuniary loss from the death of their mother, Arthola Marie Toran, including losses of care, maintenance, support, services, advice, counsel, and contribution of a pecuniary value that they would have in all reasonable probability received from their mother during her lifetime, had she lived.  In addition,

Plaintiffs have suffered loss of affection, solace, comfort, companionship, society, assistance, emotional support and love.  They suffered mental anguish, grief, and sorrow as a result of the death of their mother and are likely to continue to suffer for a long time into the future.  For these losses, Plaintiffs seek damages in a sum within the jurisdictional limits of the Court.

## REQUEST FOR JURY TRIAL

21.     Pursuant to F.R.C.P. 38, Plaintiffs hereby demand a trial by jury on all matters triable to a jury.

## CONCLUSION

20.     Plaintiffs request that Defendant be cited to appear and answer herein, and that, on final trial hereof, Plaintiffs have judgment against Defendant for a sum within the jurisdictional limits of the Court, plus pre-judgment and post-judgment interest at the highest legal rate, plus costs of court, plus such additional relief to which they may be entitled.

Respectfully submitted,


/S/ *Kurt Arbuckle*
Kurt Arbuckle
Federal ID 6613
Texas Bar No. 01284500
Kurt Arbuckle, P.C.
2121 Sage Road, Suite 100
Houston, Texas  77056
713 961-5353
713 961-5236 Fax
Email: kurt@kurtarbuckle.com
Attorney-In-Charge for Plaintiffs